## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

JOSEPH TROY HOLMES, JR.,        )
                                       )
             Petitioner,      )
                                       )
vs.                               )      **Case No. CIV-09-512-D**
                                       )
JUSTIN JONES,               )
                                       )
             Respondent.     )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus.  United States District Judge Timothy D. DeGiusti has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  Respondent has filed a motion to dismiss the petition as untimely, and Petitioner has responded. For the following reasons, it is recommended that the motion to dismiss be granted.

## I.  BACKGROUND

### A.  STATE PROCEEDINGS

Petitioner brings this action challenging his conviction for second degree murder following a jury trial, for which he received a sentence of life imprisonment. Case No. CF-2001-527, District Court of Garfield County.  Brief in Support of Motion to Dismiss, Ex. 1. Petitioner filed a direct appeal, and the Oklahoma Court of Criminal Appeals affirmed on July 16, 2004.  Petition, 3;[1] Case No. F-2003-582, Oklahoma Court of Criminal Appeals.

---

[1]The page numbers cited are the pre-printed numbers at the top of the form petition.  Page 3 is actually the second page of the petition.

Petitioner also filed four[2] applications for state post-conviction relief.

The first application for state post-conviction relief was filed on November 8, 2005, and was denied on December 20, 2005.  Brief in Support of Motion to Dismiss, Ex. 2, p. 24. Petitioner appealed, but the Oklahoma Court of Criminal Appeals declined jurisdiction and dismissed the appeal as untimely on March 9, 2006. Case No. PC-2006-59, Oklahoma Court of Criminal Appeals; Brief in Support of Motion to Dismiss, Ex. 2, p. 25 (Doc. No. 1002709089); Petition, 4. Petitioner alleges that he "procedurally defaulted" his appeal because the Oklahoma State Reformatory was "constantly on an 'institutional lockdown' for stab[b]ings and murders within that prison." Petition, 4.

Petitioner's second application for state post-conviction relief was filed on July 23, 2007, and was denied on November 15, 2007.[3]  Brief in Support of Motion to Dismiss, Ex. 2, p. 25-26.  Petitioner attempted to appeal, but the appeal was dismissed on January 16, 2008, for failure to file a timely notice of intent to appeal. Case No. PC-2007-1225, Oklahoma Court of Criminal Appeals; Petition, Attch. 3, p. 2.  Petitioner alleges that the failure to file the notice of appeal was the fault of the Garfield County court clerk's office

---

[2]Respondent refers to only three applications for post-conviction relief, whereas Petitioner contends that he filed four such applications.  Brief in Support of Motion to Dismiss, 2; Petition, 5. The docket summary for the criminal case that resulted in the conviction now under attack shows four post-conviction efforts: three applications for post-conviction relief, and one for an appeal out of time.  Brief in Support of Motion to Dismiss, Ex. 2, p. 24, 25, 26, 27.

[3]Although there are two state district court orders denying the second application for post-conviction relief – one dated October 30, 2007, and one dated November 15, 2007 – a review of the two orders reveals that they are identical.  Moreover, in its order on appeal denying Petitioner's fourth application for post-conviction relief, the Oklahoma Court of Criminal Appeals refers to the date of decision on the second application as November 15, 2007.  Petition, Attch. 3, p. 2.

because the court clerk returned his notice of intent to appeal with a note that it needed to be filed in the Oklahoma Court of Criminal Appeals.  Petition, 4.  However, Petitioner appears to be confusing this appeal with his subsequent application seeking an appeal out of time.[4]

Petitioner's third attempt to obtain state post-conviction relief came in the form of an application for an appeal out of time filed on February 20, 2008.  Brief in Support of Motion to Dismiss, Ex. 2, p. 26.  That application was denied by the state district court on April 1, 2008. Petition, Attch. 3, p. 2.  Petitioner alleges that he was unable to timely appeal from this denial due to "another institutional lockdown." Petition, 5.  Petitioner did not appeal that denial.  Petition, Attch. 3, p. 2.

Petitioner's most recent application for state post-conviction relief was filed on August 19, 2008.  Brief in Support of Motion to Dismiss, Ex. 2, p. 27.  That application was denied on October 1, 2008, and the denial was affirmed on appeal on January 21, 2009.  Case No. PC-2008-980, Oklahoma Court of Criminal Appeals (Order Affirming Denial of Fourth Application for Post-Conviction Relief, attached to the petition as Attch. 3).

---

[4]This is clear from three things in the record.  First, Petitioner attaches a copy of the court clerk correspondence to which he refers, and that correspondence bears a certificate of service dated April 8, 2008 – almost three months *after* the order dismissing the appeal from denial of his second post-conviction application, but only seven days *after* the denial of his request for an appeal out of time, Petition, Attch. 8, Ex. D.  Second, in his subsequent application for an appeal out of time, Petitioner states that the appeal from denial of his second post-conviction application was late because prison officials delayed the return of his paupers affidavit and he was in segregated housing. Petitioner's Application for an Appeal "Out of Time" in Accordance with O.C.O.CA, Rule 2.1(E) (Feb. 20, 2008).  Finally, Petitioner states in his fourth application for post-conviction relief that the alleged error of the clerk of court resulted in "procedural default of my appeal out of time" – which was Petitioner's *third* application for post-conviction relief.  Petitioner's Brief in Support of his Application for Post-Conviction Relief & his Request for an Evidentiary Hearing, Title 22 §§ 1080 & 1084, 1, n. 1. (Aug. 19, 2008).

## B.  FEDERAL PROCEEDINGS

On May 15, 2009, Petitioner filed the instant federal habeas action.  He raises eight grounds in support of his request for relief: (1) insufficient evidence to support a conviction for second degree murder; (2) admission of a rifle and a handgun as evidence – weapons that Petitioner alleges were never connected to the offense; (3) juror misconduct; (4) admission of evidence as to flight; (5) the effect of cumulative error; (6) excessive sentence (which Petitioner concedes is not proper for federal habeas review); (7) failure to instruct the jury as to the "85% Rule"; and (8) ineffective assistance of trial and appellate counsel.  Petition, 6, 7, 9, 11, 12, 13, 14, 15.

After Respondent filed the now-pending motion to dismiss, Petitioner filed a motion for discovery pursuant to Rule 6 of the Rules Governing Section 2254 Cases. Petitioner's Request for Discovery [Doc. No. 12].  Therein, he  requested all documents of the Oklahoma Department of Corrections and Oklahoma State Reformatory (OSR) showing institutional lockdowns from July 2004 to date.  Id. at 2.  He also asked for documents showing the dates that the law library was unavailable during this time, a copy of his Consolidated Record Card for the time he was housed at OSR, and any documents showing his housing assignment (including restrictive housing).  Id.  Petitioner stated that he needed this discovery to "know how long each lockdown was at OSR and any and all times the prisons law library was closed" to inmates.  Id.

The undersigned denied the motion for discovery finding that the documents requested would not be sufficient to establish equitable tolling without a showing as to the specific

steps taken by Petitioner to pursue his claims despite the lockdowns. [Doc. No. 13, p. 3].

Furthermore, the undersigned found that information as to the steps taken to pursue his

claims would be within Petitioner's personal knowledge.  The undersigned further noted that

the Oklahoma Department of Corrections provides a procedure whereby offenders can, with

some limitations, request review and/or copies of their records for a fee.  <u>Id.</u> at 4.

Although discovery was denied, the undersigned granted Petitioner additional time

to respond to the motion to dismiss. [Doc. No. 13].  His response has now been filed, and so

the matter is at issue.

## II.  DISCUSSION

Respondent moves to dismiss Petitioner's federal habeas action as untimely, arguing

that the final date for filing an application for a federal writ of habeas corpus expired on

October 14, 2005. Brief in Support of Motion to Dismiss, p. 2. Respondent further argues

that Petitioner is not entitled to statutory tolling for his state post-conviction applications

because they were all filed after the limitations period had already expired.  <u>Id.</u> at 2-3.

Respondent contends that Petitioner's request for equitable tolling is not supported by a

showing of extraordinary circumstances and due diligence, <u>Id.</u> at 4, and that even if there had

been institutional lockdowns, Petitioner must show the specific steps he took to pursue his

claims despite those lockdowns <u>Id.</u> at 5.

Petitioner acknowledges that this action was filed beyond the one-year limitation

period, but argues that he should be entitled to equitable tolling due to several institutional

lockdowns, "sometimes for months at a time," which impeded and denied his access to a

prison law library.  Petition, p. 18; Petitioner's Objection to Respondent's Motion to Dismiss

(Petitioner's Objection), 2.  He also claims that one of his three appeals from the denial of

state post-conviction relief was procedurally defaulted due to an error on the part of the court

clerk.  Petition, 18; Petitioner's Objection, 2.  Finally, he claims that he is factually innocent.

Petitioner's Objection, 2. Throughout his response to the motion to dismiss, Petitioner also

argues that the undersigned's denial of his motion for discovery has deprived him of the

ability to document the alleged state impediments to his timely filing of his federal petition.

Petitioner's Objection, 1-3.  He claims that the denial of discovery is tantamount to denial

of due process and equal protection.  Id. at 2.  He argues that it is within the Court's

discretion to order a "special report" under Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978),

and that the Court has taken the position that his claims are meritless without first affording

him procedural due process.  Id. at 2-3.

### A.  FAILURE TO ALLOW DISCOVERY

As noted, Petitioner's objection to the motion to dismiss is largely based on his claim

that the Court's failure to allow discovery has effectively deprived him of the ability to show

that equitable tolling is appropriate in his case.  However, as noted in the order denying

discovery, the standard applied to requests for discovery under Rule 6[5] is as follows:

> Rule 6(a) of the Rules Governing Section 2254 Cases in the United
> States District Courts permits discovery in the discretion of the trial judge

---

[5]The special report procedure, approved in Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978), is applicable to actions under 42 U.S.C. § 1983.  Martinez, 570 F.2d at 319 ("We consider this order and practice to be not only proper but necessary for the orderly consideration of the issues in this case and *in other cases of this nature*.").

> upon a showing of "good cause." See LaFevers, 182 F.3d at 723. Good cause
> is established "where specific allegations before the court show reason to
> believe that the petitioner may, if the facts are fully developed, be able to
> demonstrate that he is ... entitled to relief." Bracy v. Gramley, 520 U.S. 899,
> 908-09 (1997).

Wallace v. Ward, 191 F.3d 1235, 1245 (10th Cir.1999) (citing LaFevers v. Gibson, 182 F.3d

705, 723 (10th Cir. 1999) (parallel citations omitted). Even though his obligation to do so

was referenced in the order denying discovery, Petitioner has yet to provide any specifics

regarding the steps he took to pursue his claims during the alleged lockdowns. See Parker v.

Jones, No. 07-6068, 260 Fed. Appx. 81, 85 (10th Cir. Jan. 7, 2008),[6] cert. denied 128 S. Ct.

2878 (2008).  Without a specific indication as to how those lockdowns affected Petitioner's

access to legal materials or assistance, and the steps he took to nonetheless pursue his federal

habeas claims, there is no reason to believe that discovery of the dates in question would

affect the outcome of the equitable tolling issue. See id.; see also Miller v. Marr, 141 F.3d

976, 978 (10th Cir. 1998) (petitioner provided no specificity regarding the alleged lack of

access to legal material and the steps he took to diligently pursue his federal claims).

Moreover, facts demonstrating Petitioner's efforts to pursue his claims are clearly within his

personal knowledge.  An allegation that lockdowns deprived Petitioner's access to a law

library would not necessarily affect his ability to pursue his claims.  For example, the current

policy allows inmates who are subject to a lockdown to request library materials and the

---

[6]This and any other unpublished disposition are cited as persuasive authority pursuant to
Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

assistance of law library staff.[7] ODOC Procedure OP-030115(III)(B) (Facility Operations) (accessed November 6, 2009).

Finally, even though the undersigned noted in the order denying discovery that the Oklahoma Department of Corrections provides a procedure whereby offenders can, with some limitations, request review and/or copies of their records for a fee, Petitioner does not show that he has availed himself of the procedure.  Oklahoma Department of Corrections Policy and Operation Manual, OP-060212(XIII)(C), http://www.doc.state.ok.us/Offtech/op060212.pdf (accessed November 6, 2009). Accordingly, the undersigned finds that the lack of discovery as to facility lockdowns has not deprived Petitioner of a meaningful opportunity to show he is entitled to equitable tolling.

## B.  THE AEDPA LIMITATIONS PERIOD

The Antiterrorism and Effective Death Penalty Act (AEDPA) establishes a one-year limitations period governing the claims of habeas petitioners in state custody.  Rhine v. Boone, 182 F.3d 1153, 1154 (10th Cir. 1999).  The one-year limitations period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application

---

[7]"[T]he constitutional obligation to provide inmates access to courts does not require states to give inmates unlimited access to a *law library*, and inmates do not have the right to select the method by which access will be provided." Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (citations omitted) (emphasis added).

created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).  Plaintiff concedes that his direct appeal was concluded on July 16, 2004, and thus the one-year limitation began to run on or about October 14, 2004, after the 90 day time period to file a petition for certiorari in the United States Supreme Court expired.  Petition, 18.  See 28 U.S.C. § 2101; see also Sup. Ct. R. 13; Locke v. Saffle, 237 F.3d 1269, 1273 (10th Cir. 2001); see Haws v. Jorgensen, No. 05-4141, 219 Fed. Appx. 781, 783 (10th Cir. March 14, 2007) ("Haws' conviction became final on January 28, 2004, and the one year period of limitations commenced the next day, January 29, 2004." (footnote omitted) (citing United States v. Hurst, 322 F.3d 1256, 1260-61 (10th Cir. 2003)).  Thus, the limitations period expired on October 15, 2005, absent statutory or equitable tolling.

### 1.  Statutory Tolling

Although the AEDPA limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending,"  28 U.S.C. § 2244(d)(2), state court filings made *after* the expiration of the statute of limitations have no tolling effect. Fisher v. Gibson, 262 F.3d 1135, 1142-43

(10th Cir. 2001). The docket summary in Petitioner's criminal action shows that his first application for state post-conviction relief was filed on November 8, 2005, which was after the one-year limitations period had expired. Motion to Dismiss, Ex. 2, p. 24; Petition, 4.

Petitioner does not contest either the date the limitations period expired or the unavailability of statutory tolling. Petitioner's claim that his federal habeas action is timely relies solely on the doctrine of equitable tolling. See Petition, 18.

### 2. Equitable Tolling

The limitations period may be equitably tolled under circumstances where its application would possibly render the habeas remedy "inadequate and ineffective." Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998). However, equitable tolling is limited to "rare and exceptional circumstances." Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000). To justify equitable tolling, a petitioner must diligently pursue his claims and "demonstrate[] that the failure to timely file was caused by extraordinary circumstances beyond his control." Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000). The petitioner bears the burden to demonstrate his entitlement to equitable tolling. Cooper v. Bravo, No. 00-2462, 36 Fed. Appx. 343, 347 (10th Cir. Jan. 11, 2002) (citing Miller, 141 F.3d at 978).

### a. Impediment to Presentation of Claims

Petitioner claims that lengthy lockdowns in his facility impeded and denied his access to the prison law library. Petition, 18. He also claims that the Garfield County court clerk's office caused him to procedurally default the appeal from one of his first post-conviction applications by mistakenly returning his proffered notice of intent to appeal and advising him

10

to file it in the Oklahoma Court of Criminal Appeals.  Id.  The undersigned finds neither ground to be persuasive.

As discussed above in connection with Petitioner's request for discovery, the lack of library access as a result of a lockdown does not automatically entitle a petitioner to equitable tolling.  To show that such a lack of library access posed an impediment, Petitioner must specifically show the steps he has taken to pursue his claims. Parker v. Jones, No. 07-6068, 260 Fed. Appx. 81, 85 (10th Cir. Jan. 7, 2008), cert. denied 128 S. Ct. 2878 (2008); see also Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998).  Petitioner has failed to do so in this case. In addition, even assuming that an error on the part of the office of the court clerk resulted in Petitioner's inability to comply with the procedural requirements for an appeal, this alleged error occurred in April of 2008, after the dismissal of two previous appeals as untimely, and some two and a half years after the AEDPA limitation period had expired.  The undersigned finds that neither the alleged lockdowns, nor any error by the clerk of court, constitute rare and exceptional circumstances that would equitably toll the limitations period.

### b.  Diligent Pursuit of Claims

Even if the lockdown and error of the court clerk were rare and exceptional circumstances which would justify equitable tolling of the limitations period, Petitioner still must demonstrate that he has diligently pursued his federal claims.  Gibson, 232 F.3d at 808; Marsh, 223 F.3d at 1220.  "[T]his Circuit has generally declined to apply equitable tolling when it is facially clear from the timing of the state and federal petitions that the petitioner did not diligently pursue his federal claims." Burger v. Scott, 317 F.3d 1133, 1141 (10th Cir.

11

2003).  Here, Petitioner failed to timely appeal the denial of his first two post-conviction proceedings, needlessly prolonging the state post-conviction process.  Motion to Dismiss, Ex. 2, p. 25, 26; see Order Affirming Denial of Fourth Application for Post Conviction Relief, p. 1-2 (attached to petition as Attch. 3).  Petitioner waited over a year after his conviction became final to even begin his state post-conviction application process, waited over one year between his first and second applications for post-conviction relief, and waited sometimes months between his subsequent unsuccessful post-conviction applications. Motion to Dismiss, Ex. 2, p. 24, 25, 26.  Even after his final state post-conviction was concluded, Petitioner waited another four months before bringing his federal habeas action.

As noted in one of the state district court orders denying post-conviction relief, "Petitioner's excuses ... are inadequate to show no fault on [his part].  Petitioner was familiar with appellate timelines through two (2) previous appeals....  It appears he ignored the law and his past experience at his peril."  Order Denying Petitioner's Application for an Appeal "Out of Time" (Mar. 31, 2008) (Petition, Attch. 6, Ex. B).  In light of these unexplained and significant delays, the undersigned finds that equitable tolling is not appropriate.

### c.  Actual Innocence

Finally, Petitioner requests that the Court grant equitable tolling based upon his claim of "factual innocence." Petitioner's Objection, 2.  He claims that he has maintained his innocence throughout his criminal proceeding, that the jury was not advised that he would have to serve 85% of his sentence before becoming eligible for parole, and that a juror by sworn affidavit has stated that ignorance of this fact indeed led to her vote for a life sentence.

Id.

The Tenth Circuit has recognized that actual innocence may equitably toll the AEDPA statute of limitations. <u>Laurson v. Leyba</u>, 507 F.3d 1230, 1232 (10th Cir. 2007) (citing <u>Gibson</u>, 232 F.3d at 808); <u>see also</u> <u>Miller</u>, 141 F.3d at 978. To qualify for the "actual innocence" exception, Petitioner must provide evidence of a "fundamental miscarriage of justice," meaning that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray v. Carrier</u>, 477 U.S. 478, 495-96 (1986). That standard requires Petitioner to "support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). Thus, "the <u>Schlup</u> standard is demanding and permits review only in the 'extraordinary case.'" <u>House v. Bell</u>, 547 U.S. 518, 538 (2006) (quoting <u>Schlup</u>, 513 U.S. at 327); <u>Price v. Friel</u>, No. 07-4094, 245 Fed. Appx. 855, 85607 WL 2452699, *1 (10th Cir. Aug. 30, 2007) (applying standard in <u>House</u> to actual innocence claim asserted as a basis for equitably tolling the § 2244(d)(1) limitations period).

In light of this standard, the undersigned finds that Petitioner has failed to make a colorable claim of actual innocence. Furthermore, Petitioner's arguments relating to the effect of the "85% Rule" involve legal rather than factual innocence. <u>Hickmon v. Mahaffey</u>, No. 01-5073, 28 Fed. Appx. 856, 858 n.1 (10th Cir. Nov. 29, 2001) (finding petitioner's allegations regarding trial errors argue only "legal innocence," which does not justify equitable tolling of the limitations period in 28 U.S.C. § 2244(d )); <u>see also</u> <u>Bousley v.</u>

United States, 523 U.S. 614, 623 (1998) ("It is important to note . . . that 'actual innocence' means factual innocence, not mere legal insufficiency.").

## III. SUMMARY

In light of the foregoing, the undersigned recommends that Petitioner's federal habeas petition be dismissed as untimely.  Petitioner's argument that he is entitled to equitable tolling due to a lack of access to the prison law library during facility lockdowns is not supported by any showing as to the efforts he made to pursue his claims, and the alleged mistake of the office of the court clerk in connection with his third application for post-conviction relief is not sufficient – particularly in light of his two previously untimely efforts even in the absence of any mistake. Finally, Petitioner has alleged at most legal innocence, and is therefore not entitled to equitable tolling on grounds that he is actually innocent of the crime for which he was convicted.

## **RECOMMENDATION**

Based upon the foregoing analysis, it is recommended that Respondent's motion to dismiss [Doc. No. 7] be **GRANTED,** and that the petition for a writ of habeas corpus be dismissed as untimely**.**  Petitioner is advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court on or before November 26, 2009, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  The Petitioner is further advised that failure to file a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues

referred to the undersigned.

**ENTERED this 6th day of November, 2009.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE